UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KARLA WEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:08-CV-124 |
| | ) (VARLAN/SHIRLEY) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 and 19]. Plaintiff Karla West seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On August 1, 2002, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423, claiming disability as of January 1, 1997. [Tr. 101]. A decision on this initial application, dated January 13, 2005, found that the Plaintiff was not disabled. [Tr. 20]. However, the Appeals Council reviewed this decision and remanded the case back to the issuing ALJ in an Order of Remand dated April 19, 2005. After further development of the record, the Plaintiff's application was again denied, a second hearing was

held before an ALJ to review determination of Plaintiff's claim on October 5, 2005. [Tr. 20]. On March 27, 2006, the ALJ found that Plaintiff was not disabled. [Tr. 28]. The Appeals Council denied the Plaintiff's request for review of this second decision; thus the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.      ALJ FINDINGS**

> The ALJ made the following findings:
>
> 1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 et seq.).
>
> 2. The claimant has the following severe combination of impairments: major depressive disorder, recurrent, unspecified; anxiety disorder NOS; dystheymic disorder; lumbar spine impingement/tendonitis; and chronic pain syndrome (20 CFR 416.920©).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration fo the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, with occasional or frequent lifting and/or carrying up to ten pounds in an eight-hour workday; standing or walking at least two hours in an eight-hour workday with normal breaks; provided she do no climbing, stooping, bending, crouching, crawling, kneeling, or balancing; and do no more than occasional reaching and pushing or pulling with the left upper extremity. She has no limitations on sitting. She has moderate limitations in the ability to respond appropriately to work pressures in a usual work setting; moderate limitations in the ability to understand, remember, and carry out detailed instructions; and moderate limitations in the ability to respond appropriately to changes in a routine work setting.

2

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on November 15, 1960 and was 36 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferabilitiy of job skills is not material to the determination of disability due to the claimant's age (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960© and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)).

[Tr. 22-28].

## II.    DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he

3

lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.   STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of

4

Case 3:08-cv-00124-TAV-CCS   Document 20   Filed 06/23/09   Page 4 of 13   PageID #: 91

Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by: (A) finding that the Plaintiff did not meet the criteria contained in 20 C.F.R Part 404, Subpart P, Appendix 1, Listing 1.04: Disorders of the Spine, (B) finding that the Plaintiff did not meet the criteria contained in 20 C.F.R Part 404, Subpart P, Appendix 1, Listing 12.04: Affective Disorders, and © in making the residual functional capacity determination. [Doc. 15 at 17, 19, 24]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 19 at 24].

### A. Listing 1.04: Disorders of the Spine

The Plaintiff argues that her cervical and lumbar spinal disorders, combined with the side-effects of the medication she takes for these disorders fulfill the criteria contained in 20 C.F.R Part

5

404, Subpart P, Appendix , Listing 1.04. [Doc. 15 at 19]. The Commissioner maintains that the evidence of record supports the ALJ's decision.

A plaintiff alleging disability under Listing 1.04 must first demonstrate the presence of a disorder of the spine which results in compromise of the nerve tissue root or the spinal cord. In addition, he or she must demonstrate that the criteria of subsection A, B, or C has been met. In the present case, the Plaintiff claims that she meets the criteria of subsection A. [Doc. 15 at 17]. Subsection A of Listing 1.04 requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

The Plaintiff claims that prior to her surgical fusion surgery in June 2004 she met the criteria of subsection A; however, she admits that her testimony at the hearing before the ALJ held on August 18, 2004, [Tr. 674-75], calls into question whether the condition continued to exist after the fusion. [Doc. 15 at 18]. The Plaintiff also notes that physicians found that the Plaintiff was experiencing muscle spasms, which the Plaintiff classifies as a "clear anatomical response to cervical and lumbar nerve compressions." The Plaintiff directs the Court to Dr. Edward Kahn's notes which she claims demonstrate decreased reflexes. The Plaintiff also notes that Stephen King, M.D., ("Dr. King"), a consulting, examining physician to whom the ALJ accorded great weight, found limitation of motion in her range of motion.

On September 30, 2002, prior to her surgery or automobile accident, Doddie S. Davis, F.N.P, found the Plaintiff to a normal gait, and while Dr. Davis found that the Plaintiff had tenderness in midline lower lumbar spine, the Plaintiff exhibited negative sitting leg raise bilaterally. [Tr. 311].

6

Dr. Davis made no findings of any limits in the Plaintiff's range of motion. On July 22, 2004, after the Plaintiff's accident and surgery, Dr. Davis tested the Plaintiff's reflexes and made no notation of dulling. [Tr. 582]. At a July 14, 2005 visit, Dr. Davis noted that the Plaintiff's pain continued. However, he found no limitations on her range of motion, noted that she demonstrated negative straight-leg raising, and found unremarkable results to sensation and reflex testing. [Tr. 653-54]. In a July 30, 2005 examination, which also took place after both the Plaintiff's automobile accident and surgery, Dr. King found the Plaintiff to have a normal gait, only a mildly restricted range of motion, and to be neurologically intact. [Tr. 638].

As the Court of Appeals for the Sixth Circuit has previously explained, Listing 1.04A "requires a finding of limitation of motion of the spine and loss of motor reflex." Lawson v. Comm'r of Soc. Sec., 192 Fed. Appx. 521, 529 (6th Cir. 2006). As to the range of motion, the evidence of record shows, at most, a mild limitation on range of motion [Tr. 638], although this mild limitation is contrary to Dr. Davis's examination just two weeks before [Tr. 653]. Assuming that the Plaintiff's range of motion was restricted she has failed to demonstrate motor loss accompanied by sensory or reflex loss and positive straight-leg testing. The evidence in record, when taken in its entirety, does not support a finding of sensory or reflex loss. Accordingly, the Court finds that the ALJ's decision that the Plaintiff did not suffer from an impairment described in Listing 1.04A is supported by substantial evidence.

**B.      Listing 12.04: Affective Disorders**

The Plaintiff argues that the ALJ also erred by finding that she did not suffer from an impairment described in Listing 12.04. [Doc. 15 at 20]. The Commissioner responds that the ALJ considered whether the Plaintiff met the requirements of Listing 12.04, and properly concluded that

she did not fulfill the applicable criteria. [Doc. 19 at 17].

Listing 12.04 addresses affective disorders which are impairments "characterized by disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Listing 12.04 contains three prongs. In order to satisfy Listing 12.04, a claimant must met the requirements contained in parts A and B of the listing or the requirements contained in part C. Id. Part A requires medically documented persistence of depressive syndrome or manic syndrome, each with certain documented symptoms. Id. In his analysis, the ALJ appeared to take part A as being established and focused upon the Plaintiff's failure to meet the criteria contained in part B and part C.

*1. Listing 12.04, Part B*

Part B requires that the syndrome found in part A result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decomposition, each of extended duration. Id. The Plaintiff in the present case was never found to have marked limitation in any of these areas. To the contrary, and as the ALJ noted in his decision, the Tracy Allred, Ed. D., ("Dr. Allred"), found the Plaintiff to have only mild to moderate limitations in these areas in her 2005 examination, [Tr. 631], as did state agency medical consultant Victor A. Pestrak, PhD, in his 2003 review [Tr. 421].

In regards to restrictions on daily living, the Plaintiff presents what she perceives to be the ALJ's misinterpretation of her daily activities. [Doc. 15 at 22]. The applicable regulations instruct that the term "marked" is not defined "by a specific number of different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function."

8

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C. The Plaintiff claims that the ALJ inflated her abilities in finding that she was only moderately limited in her daily activities. However, looking at the Plaintiff's own testimony, her admissions that she is able to fix sandwiches for herself, clean the dishes that she dirties, complete some grocery shopping, and care for her dog are entirely consistent with the ALJ's determination that she was only moderately limited in her daily activities. [Tr. 726-29].

"Moderate" limitation does not meant that the Plaintiff is able to perform the full spectrum of daily activities; rather it indicates a real restriction on these daily activities. The Court does not doubt that the Plaintiff's daily activities have been reduced by her severe impairments. However, in light of her continued ability to perform the basics of self-maintenance, the Court finds that the Plaintiff continues to be able to "function independently, appropriately, effectively, and on a sustained basis," 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C, and therefore, finds that the evidence of record supports finding only a moderate restriction.

The Plaintiff also notes her global assessment of function ("GAF") scores in her discussion of Listing 12.04B. Although the Plaintiff does not tie her GAF score to any of the specific criteria contained in Listing 12.04, the Court has examined the criteria and determined that this score does not undermine the ALJ's determination that the Plaintiff had no marked limitations. The Plaintiff admits that after the Plaintiff's most recent mental examination Dr. Allred found her GAF score to be 51. [Tr. 656]. However, the Plaintiff asserts that the average of her various GAF scores is in the 40s. [Doc. 15 at 24]. Looking at the GAF numbers cited by the Plaintiff, it appears that the average

9

is actually 49.67,[1] a number which generally is rounded to 50 and which the Court considers to be consistent with the most recent GAF score of 51. [Doc. 15 at 24]. Given that the Plaintiff's averaging is based in large part on data outside the period of disability and that it, nonetheless, is not markedly different from Dr. Allred's evaluation, the Court finds that the ALJ properly relied on the GAF score of 51. Such a score indicates only moderate symptoms and does not support finding any of the criteria in 12.04B.

Based on the foregoing, the Court finds that the Plaintiff has presented no evidence which undermines the ALJ's determination, and after reviewing the evidence of record, the Court concludes that the ALJ's determination that the Plaintiff did not meet the criteria of 12.04B is supported by substantial evidence.

2.  *Listing 12.04, Part C*

As stated above, a claimant must satisfy both part B and part A to be found to have an affective disorder, or in the alternative, a claimant may satisfy just the criteria of part C, which are as follows:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psycho social support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or

---

[1] Plaintiff cites the following scores 50 on November 17, 1994, 50 on December 30, 1992, 49 on June 23, 1998, 50 on October 11, 1995, and 48 on September 23, 2003. [Doc. 15 at 24]. Only two of these scores fall within the claimed period of disability. Putting the staleness of these scores aside, these scores when averaged with the 51 from July 20, 2005, average out to 49.67.

10

Case 3:08-cv-00124-TAV-CCS   Document 20   Filed 06/23/09   Page 10 of 13   PageID #: 97

> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

The ALJ found no evidence to establish the criteria contained in 12.04C. [Tr. 23]. The Plaintiff has not cited the Court to evidence of repeated periods of decompensation, a residual disease process that is likely to lead to decompensation, or one or more years of an inability to function. In the absence of any specific evidence of these three criteria, the Court finds that the Plaintiff has failed to carry her burden as to part C, and therefore, the Court finds that ALJ's determination that the Plaintiff did not suffer from the severe impairment described in Listing 12.04C is supported by substantial evidence.

**C.     Residual Functional Capacity Determination**

The Plaintiff makes a final general argument that "the combination of [Plaintiff's] back and depression conditions is enough to equal the severity of the listings, but in addition her remaining physical problems add to the overall impact on her ability to work." [Doc. 15 at 24]. Because the Plaintiff's residual functional capacity ("RFC") is an assessment of a claimant's remaining capacity for work, after his or her impairments and limitations have been taken into account, 20 C.F.R. § 416.945, the Court will consider the Plaintiff's argument to be an attack on the RFC determination.

11

The ALJ determined that the Plaintiff retained the residual functional capacity to perform sedentary work.[2] This exertional portion of the RFC is consistent with the opinion of Dr. King, who after completing a consultative examination on July 30, 2005, found that the Plaintiff: was limited to lifting and carrying 10 lbs or less, occasionally; could stand or walk up to four hours per day, with period where she could rest; should be limited from climbing, balancing, kneeling, crouching, crawling, and stooping; and would be limited in reaching above shoulder level or pushing and pulling with her left upper extremity. [Tr. 640-41]. The Plaintiff presents no evidence to undermine Dr. King or the ALJ's physical exertion limitations, and thus, the Court finds the ALJ's determination of exertional limitations to be supported by substantial evidence.

The Plaintiff appears to argue that her nonexertional limitations have not been properly considered by stating that her migraine headaches disrupt her life and that she "still has the seizure issue." [Doc. 24 at 15]. In evaluating the affect of the Plaintiff's seizures, the ALJ noted that the Plaintiff had a single seizure in August 1996, but she failed to take the anticonvulsive medicine that was prescribed after the incident and never experienced another seizure. [Tr. 22]. The ALJ also considered the implications of the Plaintiff's migraine headaches and found that the only medical evidence of the condition was an emergency room physician's instruction to get follow-up treatment

---

[2]Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

for the condition, which the Plaintiff never did. [Tr. 22].

The Plaintiff has presented no evidence to refute the ALJ's assessment of these nonexertional conditions. The Court concludes that the ALJ addressed these conditions and properly determined that they should be accorded little weight in making the RFC determination, as the evidence of record indicated that they were conditions which did not significantly impact the Plaintiff's ability to function.

**V.     CONCLUSION**

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment [**Doc. 13**] be **DENIED** and that the Commissioner's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).